## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| AMANDA BRYANT, a Texas resident; MICHAEL WALKER, a Texas resident; SWIM HOUSTON POOL MANAGEMENT L.L.C., a Texas Limited Liability Company; HARN LEE, a Texas resident; NANCY NGUYEN, DOING BUSINESS AS SILVER ANDY NAILS, a sole proprietorship in Texas; and STEPHANIE OCHOA, a Texas resident; all on behalf of themselves individually and all others similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>INTERCONTINENTAL TERMINALS COMPANY, LLC a Delaware corporation; MITSUI & CO. (U.S.A.), INC., A New York Corporation; MITSUI & COMPANY, a Japanese Company.<br><br>Defendants. | CIVIL ACTION NO.:<br><br>CLASS ACTION COMPLAINT FOR:<br><br>1. TRESPASS;<br>2. NEGLIGENCE;<br>3. NUISANCE.<br><br>JURY DEMANDED |

Plaintiffs, on behalf of themselves, and on behalf of all others similarly situated in the Putative Class, allege upon information and belief:

### NATURE OF ACTION

1.      This is a class action on behalf of individuals whose quality of life and use and enjoyment of their property has been damaged by the toxic chemicals released during an emissions event and fire at a petrochemical terminal facility.  The petrochemical terminal facility was owned and operated by Defendant Intercontinental Terminals Company, LLC ("ITC"), Defendant Mitsui & Co. (U.S.A.), Inc. and/or Defendant Mitsui & Company.  The petrochemical terminal facility is located in Deer Park, Texas ("ITC Facility").

1

## JURISDICTION AND VENUE

2.      Original jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§1331 (Federal Question) and 1332(d)(2) (Class Action).  Diversity exists between the named Plaintiffs of this class action, each of whom are citizens of the State of Texas, and Defendants.  Defendant Intercontinental Terminals Company, LLC, is incorporated in Delaware.  Defendant Mitsui & Co. (U.S.A.), Inc. and/or Defendant Mitsui & Company are headquartered in New York and Japan, respectively. Upon information and belief, the Plaintiffs allege the defendants are doing business in the Southern District of Texas with sufficient contacts to confer personal jurisdiction. The proposed Class exceeds 100 persons. The amount in controversy exceeds the required $5,000,000.00.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2), because a substantial portion of the events and omissions giving rise to Plaintiffs' claims occurred in the Southern District of Texas where the ITC Facility is located.

## THE PARTIES

### The Plaintiffs

4.      Plaintiff Amanda Bryant is above the age of majority and is a resident of Deer Park, TX.  She lives on property she owns approximately 5.1 miles from the ITC Facility.  Her children attend school in the Deer Park Independent School District which was forced to cancel classes due to the ITC fire in Deer Park.

5.      Plaintiff Michael Walker is above the age of majority, and is a resident of Deer Park, TX.  He lives on property he owns approximately 5.9 miles from the ITC Facility. His child attends school in the Deer Park Independent School District which was forced to cancel classes due to the ITC fire in Deer Park.

6.      Plaintiff Swim Houston Pool Management L.L.C. is a business incorporated in Texas and located in Deer Park. It is approximately 5.9 miles from the ITC fires in Deer Park.

7       Plaintiff Harn Lee is above the age of majority, and is a resident of Deer Park, TX. She lives on property she owns approximately 4.3 miles from the ITC Facility. Her child attends school in the LaPorte Independent School District which was forced to cancel classes due to the ITC fire in Deer Park.

8.      Plaintiff Nancy Nguyen, doing business as Silver Andy Nails, which is located in Deer Park, TX, approximately 6.3 miles from the ITC Facility.

9.      Plaintiff Stephanie Ochoa is above the age of majority, and is a resident of Pasadena, TX. She lives in property she rents approximately 7.7 miles from the ITC Facility. She has a child that attends the Deer Park Independent School District which was forced to cancel classes due to the ITC fire in Deer Park.

## The Defendants

10.     Defendant Intercontinental Terminals Company, LLC is a Delaware corporation with its principal place of business in La Porte, Texas. It is the owner, operator and permittee of the ITC Facility which is located at 1943 Independence Parkway South, La Porte, Texas. Defendant Intercontinental Terminals Company is a wholly owned operating subsidiary of Defendant Mitsui & Co. (U.S.A.), Inc. and/or Defendant Mitsui & Company.

11.     Defendant Mitsui & Co. (U.S.A.), Inc. is a New York Corporation with its principal place of business in New York, New York. Upon information and belief, it and/or Defendant Mitsui & Company is the parent company of Defendant Intercontinental Terminals Company.

3

12.     Defendant Mitsui & Company is a Japanese Corporation with its principal place of business in Japan.  Upon information and belief, it and/or Defendant Mitsui & Co. (U.S.A.), Inc. is the parent company of Defendant Intercontinental Terminals Company.

## Piercing Corporate Veil

13.     Plaintiffs allege that Defendant Mitsui & Company and/or Defendant Mitsui & Co. (U.S.A.), Inc., are, and at all times herein mentioned were, shareholders of Defendant Intercontinental Terminals Company, LLC, and/or subscribers to stock therein. There exists, and at all times herein mentioned existed, a unity of interest between Defendant Mitsui & Company and/or Defendant Mitsui & Co. (U.S.A.), Inc. and Defendant Intercontinental Terminals Company, LLC, such that any individuality and separateness between the Defendant Shareholders and Defendant Intercontinental Terminals Company, LLC, have ceased, and are the alter ego of Defendant Shareholders as follows:

(a)     Plaintiffs allege that Defendant Intercontinental Terminals Company, LLC, at all times herein mentioned, had insufficient capital, assets, stock or stockholders. Defendant Intercontinental Terminals Company, LLC, was conceived, intended, and used by defendant shareholders as a device to avoid individual liability and for the purpose of substituting an inadequately capitalized corporation in the place of Defendant Mitsui & Company and/or Defendant Mitsui & Co. (U.S.A.), Inc. Shareholders.

(b)     Plaintiffs allege that Defendant Intercontinental Terminals Company, LLC is, and at all times herein mentioned, was inadequately capitalized compared with the business to be done by Defendant Intercontinental Terminals Company, LLC and the risks of loss attendant thereto.

4

(c)     Plaintiffs allege that Defendant Intercontinental Terminals Company, LLC is and, at all times herein mentioned, was the alter ego of Defendant Mitsui & Company and/or Defendant Mitsui & Co. (U.S.A.), Inc. and at all times herein mentioned existed, a unity of ownership such that any separateness has ceased to exist.

(d)     Plaintiffs allege that Defendant Intercontinental Terminals Company, LLC is, and at all times mentioned herein was, a mere shell, instrumentality and conduit through which Defendant Mitsui & Company and/or Defendant Mitsui & Co. (U.S.A.), Inc. carried on their business in the name of Defendant Intercontinental Terminals Company, LLC, exercising complete control and dominance of such businesses to such an extent that any individuality or separateness of Defendant Intercontinental Terminals Company, LLC and Defendant Mitsui & Company and/or Defendant Mitsui & Co. (U.S.A.), Inc. does not now, and at any time herein mentioned did not, exist.

(e)     Plaintiffs allege that Defendant Intercontinental Terminals Company, LLC is, and at all times herein mentioned was, controlled, dominated, and operated by Defendant Mitsui & Company and/or Defendant Mitsui & Co. (U.S.A.), Inc. as their individual business and alter ego, in that the activities and business of Defendant Intercontinental Terminals Company, LLC were carried out without following the required corporate formalities.

(f)     Plaintiffs allege that adherence to the fiction of separate existence of Defendant Intercontinental Terminals Company, LLC as an entity distinct from between Defendant Mitsui & Company and/or Defendant Mitsui & Co. (U.S.A.), Inc. Defendant Shareholders would permit abuse of the corporate privilege and produce an inequitable result in that Defendant Shareholders guaranteed certain of Defendant Intercontinental

5

Terminals Company, LLC obligations, thereby enabling Defendant Intercontinental Terminals Company, LLC  to remain in active business, without adequate financing or insurance, which invited the public generally to rely upon Defendant Intercontinental Terminals Company, LLC.

## CLASS ALLEGATIONS

14.     Plaintiffs bring this claim on behalf of the following Class, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), 23(b)(3) and 23(c)(4).

15.     The Class consists of:

    a.     the individuals, businesses, and governmental entities in Deer Park, Texas subject to the order to Shelter in Place due the ITC fires; and

    b.     the parents of students enrolled in schools and independent school districts that cancelled classes due to the ITC fires.

16.     The identities of all the class members are readily obtainable from governmental and school records.

17.     Excluded from the Plaintiff Class are the Defendants and all officers, members, partners, managers, directors and employees of the Defendants and their respective immediate families, and legal counsel for all parties to this action, and all members of their immediate families.

18.     This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

a.      **Numerosity:**   The Plaintiffs are informed, believe, and on that basis allege, that the Plaintiff Class defined above is so numerous that joinder of all members would be impractical.

b.      **Typicality:**   The Plaintiffs' claims are typical of the claims of the class members.   The Plaintiff and all members of the Plaintiff Class have claims arising out of the Defendants' common uniform course of conduct complained of herein.

c.      **Common Questions Predominate:**   There are questions of law and fact common to the Plaintiff Class that predominate over any issues involving only individual class members. The common issues of law and fact, include, but are not limited to: (1) whether Defendants are liable for damages to the Class for releasing toxic chemicals and/or for their negligent failure to plan and prepare for an emergency involving the release of toxic chemicals; (2) whether Defendants are liable for trespass, negligence and nuisance; (3) the type and scope of damages caused by Defendants' conduct; and (4) the extent to which the properties in the class area suffered a diminution in value as a result of the ITC fire. These and other common issues of law and fact relate to and affect the rights of Plaintiffs and Class Members.

d.  **Typicality:**  The Plaintiffs' claims are typical of the Class Members, as all are based upon the same facts and legal theories.  The Plaintiffs will fairly and adequately protect the interests of the Plaintiff Class defined in this complaint.  The Plaintiffs have retained counsel with experience in handling environmental lawsuits, complex legal issues, and class actions, and neither the Plaintiffs nor their attorneys have any interests, which might cause them not to vigorously pursue this action.

e.  **Adequacy:**  The Plaintiffs will fairly and adequately protect the interests of the Plaintiff Class defined in this complaint.  The Plaintiffs have retained counsel with experience in handling environmental lawsuits, complex legal issues, and class actions. Neither the Plaintiffs nor their attorneys have any interests, which might cause them not to vigorously pursue this action.

f.  **Superiority:**  A class action is superior to the other available means for the fair and efficient adjudication of the controversy because individual joinder of all members would be impracticable.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

19.    Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

8

## FACTUAL ALLEGATIONS

20.     On Sunday, March 17, 2019, at 10:30 AM, at the ITC Facility, a leak occurred in the manifold associated with tank 80-8, containing the volatile petroleum product naphtha.  The release ignited and the fire quickly spread to other adjacent tanks. Plaintiffs are informed and believe that but for negligence on the part of ITC in the construction, maintenance or operation of, or response to, the naphtha tank fire, the event would not have occurred.

21.     On Sunday, March 17, 2019 at 11:21 AM, the City of Deer Park issued a Shelter-In-Place Order due to the chemical tank fire at the ITC Facility.   Throughout the day, Deer Park's Office of Emergency Management expanded the Shelter-In-Place Order to include all of Deer Park city limits.

22.     The City of Deer Park's Shelter-In-Place Order mandated:

1.      **GO INSIDE IMMEDIATELY**

Seek the nearest enclosed structure, whether it's a house, business, garage or vehicle.  If you know of any unattended child in your neighborhood, call them and tell them to remain in doors.  Keep any pets inside also Gather emergency supplies like a portable radio, flashlight and extra batteries.

2.      **CLOSE UP**

Close all doors, windows, and other sources of outside air.  Turn off air conditioning or heating systems and close the fireplace damper to keep chemical vapors from entering.  Ceiling fans or rotary fans inside the building can be safely used to keep cool.

Cover any gaps, holes, or cracks with wet towels or sheets to prevent vapors from entering your home.  If you have trouble breathing, contact 9-1-1 and cover your nose and mouth with a damp washcloth, then take slow, shallow breaths and try to stay calm.

9

**3.     STAY INFORMED**

Stay off the telephone.  City officials may try to telephone your
Home or business using the city's computerized telephone
notification system.  Do not call police, fire or 9-1-1 unless you are
reporting an emergency at your location.  Overloaded phone
circuits may keep actual emergency calls from getting through.

23.     On Sunday, March 17, 2019 at 1:20 PM, the City of Deer Park announced that
State Highway 225 was closed to all traffic from Beltway 8 to Independence Parkway.

24.     On Sunday, March 17, 2019 at 1:25 PM, the City of Deer Park posted on
Facebook that the chemical tank fire remained uncontrolled as of 1:00 PM.  At that time, the City
of Deer Park, extended the Shelter in Place Order:

"Residents are asked to remain sheltered and avoid going outdoors if at all

possible.  Community air monitoring is being conducted and additional updates

will be provided as they become available."

25.     On Monday, March 18, 2019 at 5:30 AM, the City of Deer Park lifted the Shelter-
In-Place Order and re-opened State Highway 225.  However, portions of Independence Parkway
were remained closed.

26.     On Monday, March 18, 2019, The Deer Park and La Porte Independent School
Districts cancelled all classes due to the hazards posed by the ITC fires.

27.     On Monday, March 18, 2019 at 12:28 PM, the City of Deer Park, through its Facebook page, reported that the tanks that were burning contained naphtha, xylene, GBS (gas blend stock) and lubricant oil.

a.      **Naphtha**: Is a flammable liquid hydrocarbon mixture.  Mixtures labeled naphtha have been produced from natural gas condensates, petroleum distillates, and the distillation of coal tar and peat.  Petroleum naphtha is an intermediate hydrocarbon liquid stream derived from refining crude oil.  It is primarily used to dilute heavy oil to make it easy to move through pipelines, to make high-octane gasoline, to make lighter fluid and to clean metal.  Thus, it is used as a fuel, to make fuel and as a solvent.

b.      **Xylene**: Is any one of three isomers of dimethylbenzene, or a combination thereof. With the formula $(CH_3)_2C_6H_4$, each of the three compounds has a central benzene ring with two methyl groups attached at substituents. It is primarily used as a solvent (a liquid that can dissolve other substances) in the printing, rubber, and leather industries. Along with other solvents, xylene is also widely used as a cleaning agent, a thinner for paint and varnishes.

c.      **GBS (gas blend stock)**: is a complex hydrocarbon used to produce fuel, particularly gasoline.  It is a complex mixture of hydrocarbons consisting of paraffins, cycloparaffins, aromatic and olefinic hydrocarbons having molecular chains ranging in length from four to ten carbons.  It is generally an intermediate product that is used to produce a variety of gasolines, which are used as fuel for internal combustion engines.

d.      **Lubricant Oils**: are an additive blend of refined oil.  It is a complex mixture of low and high molecular weight hydrocarbons, lubrication additives, and various organic and inorganic compounds. It often has an amber color and petroleum

11

odor.   It can be used in combination with other products.   It is used for lubricating hydraulic systems and engines.

28.      On Monday, March 18, 2019 at 5:18 PM, the City of Deer Park stated that six tanks remained on fire.   The Deer Park Independent School District and La Porte Independent School District decided to reopen for school on Tuesday, March 19, 2019.

29.      On Tuesday, March 19, 2019 at 2:30 AM, ITC announced that a raging fire at the ITC Facility spread to two more massive tanks after the firefighting water pumps stopped working for six hours.

30.      On Tuesday, March 19, 2019 at 12:17 PM, the City of Deer Park provided an update.   It reported that an ITC representative at a press conference stated that six tanks (80-2, 80-3, 80-5, 80-6, 80-8 and 80-11) remained on fire, that tanks (80-9 and 80-11) had collapsed during the firefighting process and that two more tanks (80-14 and 80-15) were now on fire. "Fire had intensified overnight on Monday [March 18] due to a temporary loss of water pressure and water resources between the hours of 4PM and 10PM.   The loss of water pressure was due to the malfunction of two fireboat pumps that were providing water to firefighters operating on scene."

31.      One of these two tanks (80-14 and 80-11) contained toluene, a volatile liquid used to make nail polish remover and paint thinner.

32.      On Tuesday, March 19, 2019 at 7:40 PM, the City of Deer Park noted an update from ITC.   Four tanks (80-2, 80-3, 80-5 and 80-6) remained on fire Tuesday afternoon.   Three of these tanks contained a gas blend and tank (80-5) contained xylene.

33.      On Tuesday, March 19, 2019 at 10:15 PM, the City of Deer Park reported a statement from ITC, which stated that tanks (80-2, 80-3, 80-5 and 80-14) were burning.

12

34.     On Wednesday, March 20, 2019, ITC issued a press release informing the public that the fire had been extinguished at 3:00 AM.

35.     A few hours later, Alice Richardson, ITC Public Information Officer, said, "The cause of the fire is still unknown, but as soon as it is safe to get our personnel in the tank farm, we will begin a root cause investigation."

36.     On Wednesday, March 20, 2019, Deer Park ISD, La Porte ISD, Sheldon ISD, Channelview ISD and Galena Park ISD cancelled classes due to the hazards of the ITC fires.

37.     On Wednesday, March 20, 2019 at 1:40 PM, the City of Deer Park stated that air monitoring continued.   Air monitoring reports indicated that Shell Deer Park experienced elevated levels of benzene in the morning.

38.     On March 20, 2019 at 7:00 PM, the City of Deer Park received confirmation from ITC that a flare-up of the fire had occurred at the ITC Facility.

39.     On Thursday, March 21, 2019 at 4:49 AM, Shelter-In-Place Orders were again issued by the cities of Deer Park and Galena Park after elevated levels of benzene and other volatile organic compounds were detected within the city limits of both cities.  A message from ITC informed Deer Park that the affected area is south of Tidal Road, east of Beltway 8, west of Underwood Road and north of Pasadena Boulevard.

40.     On Thursday, March 21, 2019, by 5:45 AM, the City of Deer Park expanded its closure of State Highway 225 to Highway 146 due to the elevated levels of benzene.

41.     On Thursday, March 21, 2019, by 5:45 AM, a spokesperson for ITC represented that the benzene levels: "are below those that represent an immediate risk."   However, the Texas Commission on Environmental Quality ("TCEQ") issued a statement that: "High levels of benzene detected at ITC fire site."  The TCEQ wrote: **"One-hour levels of benzene in Deer**

Park were measured at a maximum of 190.68 parts per billion at 4 a.m., dropping to 48.03 ppb at 5 a.m. and 8.12 ppb at 6 a.m.  **Short-term exposure to one-hour benzene concentrations above 180 ppb can be a cause for health concern.**"

42.     Due to these concerns of exposure to benzene, the City of Pasadena required all its employees living in nearby Deer Park to abide by the Shelter-In-Place Order.

43.     On Thursday, March 21, 2019 at 7:40 AM, the City of Deer Park announced that the Deer Park Police Department had placed barricades blocking all northbound traffic from the Pasadena Boulevard intersections, including Center Street, East Boulevard, Georgia, Oklahoma, Louisiana and Luella.  Similarly, northbound traffic from Spencer Highway was blocked at intersections that included East Boulevard, East Meadows, Luella, College Park, Academy, Center Street, Durant and Glenwood.  A barricade was also placed at the intersection of Pasadena Boulevard and Louisiana to prevent eastbound traffic on Pasadena and northbound traffic on Louisiana.  Furthermore, barricades were erected on Old Underwood at X Street and on South Battleground/Independence Parkway.  State Highway 225 was to remain closed between Beltway 8 and Highway 146.

44.     On Thursday, March 21, 2019, in addition to the Shelter-In-Place Orders being issued by Deer Park and Galena Park, the following school districts announced that they would be closed because of environmental concerns:  Channelview ISD, Pasadena ISD, Deer Park ISD, La Porte ISD, Sheldon ISD, Galena Park ISD and Clear Horizons Early College High School (a Clear Creek ISD school).

45.     Other local educational institutions also closed, including all campuses and district offices for San Jacinto College, YES Prep East End and Southeast campuses, St. Pius V Catholic School, Texas Chiropractic College and all buildings and institutions on KIPP's Northeast Campus.

46.     On Thursday, March 21, 2019 at 11:40 AM, The City of Deer Park lifted the Shelter-In-Place Order because it believed benzene levels in the air had fallen below actionable limits.

47.     On Thursday, March 21, later that day, Deer Park ISD and La Porte ISD cancelled classes for Friday, March 22, 2019 even though the City of Deer Park had lifted the Shelter-in-Place Order.

48.     On Friday, March 22, 2019, at 12:15 PM, the dike wall containing the product released during the fire partially collapsed.  ITC sent a Shelter-in-Place Notification to its industrial neighbors and the San Jacinto Texas State Historic Site.

49.     On Friday, March 22, 2019, at approximately 2:00 PM, the United States Coast Guard closed the Houston Ship Channel between Dow (Tucker Bayou) and the San Jacinto Monument to Crystal Bay due to the breach of the tank farm secondary containment dike wall on the north side near tank (80-7).

50.     On Friday, March 22, 2019, at 3:45 PM, a flare up occurred at the ITC Facility. ITC later informed the City of Deer Park that multiple tanks in the west side of the Deer Park facility containment area had reignited.  The fire had spewed thick, acrid smoke in a black plume into the air, which was visible from at least as far as Galveston Ferry 35 miles from the terminal. Some of the chemicals leaked into the Houston Ship Channel, which links the Gulf of Mexico to Houston.  This had caused the US Coast Guard to close portions of the Houston Ship Channel.

15

51.     The fire caused the release of air contaminants, including, but not limited to, PM2.5, PM10, benzene, NOx, toluene and xylene.

a.      **PM 10**: is particulate matter 10 micrometers or less in diameter.  For comparison, a human hair is about 100 micrometers.

b.      **PM 2.5**: is a particulate matter 2.5 micrometers or less in diameter.  These are generally defined as fine particles.

c.      **Benzene**: is an organic chemical compound with the formula $C_6H_6$. It is composed of six carbon atoms in a ring with one hydrogen atom attached to each, making it a hydrocarbon. It is a natural constituent of crude oil and is one of the elementary petrochemicals.  Benzene is colorless, with a sweet smell that causes the aroma common to gas stations.  It is highly flammable.  It is used as a precursor to manufacture more complex chemicals like ethylbenzene and cumene.  It has been limited to being less than 1% of gasoline because it is a known human carcinogen.

d.      **Tolulene**: is an aromatic hydrocarbon.  It is a derivative of benzene, consisting of a $CH_3$ group attached to a phenyl group. The chemical formula for toluene is $C_7H_8$. It is a colorless liquid that has a smell associated with paint thinners. It is used to make explosives, but its most common uses are as a solvent, in particular paint thinner, and as an octane booster in various types of gasolines.

e.      **NOX**: is a chemical compound named nitrous oxide.  It is commonly known as nitrous or laughing gas.  It is made from two nitrogen atoms and two carbon atoms and has the chemical formula $N_2O$.  At room temperature, it is a colorless, non-flammable gas.  However, at elevated temperatures, it is a powerful oxidizer.  Its most

common uses include as an anesthetic to relieve pain in surgery and dentistry and as an oxidizer in rocket propellants and auto racing to increase the power output of engines.

52.     On Friday, March 22, 2019, at 4:20 PM, Harris County Precinct 8 shut down the Beltway 8 Ship Channel Bridge.

## FIRST CAUSE OF ACTION

**(Trespass to Real Property Against Intercontinental Terminals Company, LLC**

**Mitsui & Co. (U.S.A.), Inc., and Mitsui & Company)**

53.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein the preceding paragraphs 1 through 52.

54.     Plaintiffs owned, or had a legal right, to possess real property.

55.     Defendants are liable for trespass as a result of migration or transport of an air contaminant or contaminants, which was other than just an odor, the result of which caused actual and substantial damages to the Plaintiffs, as described in Texas Civil Practice and Remedies Code 75.002(h).

56.     By releasing toxic chemicals, including the black ash, residue and other chemicals into the air and/or water, Defendants entered Plaintiffs' land, and the entry was physical, intentional and voluntary.

57.     The toxic chemicals released by Defendants from the ITC facility were not produced by a natural process.

58.     Defendants' trespass caused injury to Plaintiffs' right of possession and constituted a trespass and nuisance.

17

59.     Defendants' actions constituted grossly negligent, outrageous, malicious, or otherwise morally culpable conduct, warranting exemplary or punitive damages sufficient to deter such conduct in the future.

## SECOND CAUSE OF ACTION

### (Negligence Against Intercontinental Terminals Company, LLC

### Mitsui & Co. (U.S.A.), Inc., and Mitsui & Company)

60.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein the preceding paragraphs 1 through 59.

61.     Defendants owed a duty to exercise ordinary care, meaning that degree of care that would be used by any chemical/petrochemical/waste products storage company of ordinary prudence under the same or similar circumstances.

62.     Defendants negligently breached the duty owed to Plaintiffs and the Class in one or more of the following ways:

        a.      In failing to properly design, engineer, construct, maintain, inspect and/or operate the ITC facility;

        b.      In failing to properly store chemicals/petrochemicals/waste products;

        c.      In failing to have adequate emergency planning, response and other procedures in place to warn the public of and to protect the safety and welfare of the community in the event of a catastrophe;

        d.      In failing to provide the public and first responders accurate information on the risks of the fires;

        e.      In failing to provide adequate warning;

18

63.     Defendants' negligence directly and proximately caused damage to Plaintiffs and the Class, causing property damage, annoyance, discomfort and inconvenience, and creating a trespass and nuisance.

64.     Defendants' actions constituted grossly negligent, outrageous, malicious, or otherwise morally culpable conduct, warranting exemplary or punitive damages sufficient to deter such conduct in the future.

## THIRD CAUSE OF ACTION

### (Nuisance Against Intercontinental Terminals Company,

### Mitsui & Co. (U.S.A.), Inc., and Mitsui & Company)

65.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein the preceding paragraphs 1 through 64.

66.     The Plaintiffs are persons of ordinary sensibilities that were attempting to use and enjoy land at the time of the ITC fire.

67.     The Defendants' conduct related to the ITC fire created a condition that substantially interfered with the Plaintiffs' use and enjoyment of land.

68.     The Defendants' substantial interference caused unreasonable discomfort and/or annoyance to the Plaintiffs.

69.     The Defendants' conduct related to the ITC fire was negligent, intentional, unreasonable, or abnormal and out of place of its surroundings.

70.     Plaintiffs did not consent to Defendants' conduct related to the ITC fire.

71.     The Defendants' conduct related to the ITC fire constituted a nuisance.

72.     Defendants' actions related to the ITC fire constituted grossly negligent, outrageous, malicious, or otherwise morally culpable conduct, warranting exemplary or punitive

damages sufficient to deter such conduct in the future.

## **JURY DEMAND**

73.     Plaintiffs hereby demand trial by jury on all Causes of Action in which it is permitted.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully pray for a Jury Trial and for the following relief:

1.     An Order certifying this action to proceed as a class action, authorizing Plaintiffs to represent the interests of the Class as appropriate and appointing undersigned counsel to represent the Class;

2.     An award of damages or mechanism for recovery to compensate the Class for the harm caused;

3.     An award of exemplary or punitive damages to the Class to deter similar conduct by the Defendants in the future;

4.     Prejudgment and post-judgment interest on all sums allowed by law;
        Damages for lost revenues and wages;

5.     An Order establishing such administrative procedures as are reasonable to effectuate the relief granted Plaintiffs and the Class Members;

6.     That the Court order Defendants to pay for the costs of this proceeding, including reasonable attorneys' fees and costs, including, but not limited to, costs of Class Notice and administration; and

7.    Such other relief as the Court or Jury may deem appropriate.

**DATED:**

Respectfully Submitted,

**UNDERWOOD LAW OFFICE, INC.**

/s/ Mark F. Underwood
Attorney in charge.
Mark F. Underwood, Esquire
Texas State Bar No.: 24059341
Southern Dist. of TX Bar No. 2601475
2530 West White Avenue, Suite 200
McKinney, Texas 75071
Telephone (972) 535-6377
Facsimile (972) 292-7828
munderwood@underwoodlawoffices.com

**STAG LIUZZA, L.L.C.**

/s/ Michael G. Stag, Esq.
Louisiana State Bar No. 23314
Attorney seeking pro hac vice admission
Ashley Liuzza, Esq.
Louisiana State Bar No. 34645
Attorney seeking pro hac vice admission
One Canal Place
365 Canal Street, Suite 2850
New Orleans, Louisiana 70130
Telephone: (504) 593-9600
Facsimile: (504) 593-9601
mstag@smithstag.com
aliuzza@smithstag.com

**DENNIS SPURLING, P.L.LC.**
s/ Dennis D. Spurling
Dennis D. Spurling, Esq.
Texas State Bar No.: 24053909
Southern Dist. of TX Bar No. 718307
ddspurling@dennisspurling.com
J.P. Morgan Chase Building
3003 S. Loop West, Suite 400
Houston, Texas 77054
Telephone (713) 229-0770
Facsimile (713) 229-8444

**THOMPSON BARNEY LAW FIRM**
/s/ Kevin W. Thompson
Kevin W. Thompson, Esquire (W.V. 5062)
*Attorney seeking admission pro hac vice*
David R. Barney, Jr., Esquire (W.V. 7958)
*Attorney seeking admission pro hac vice*
*admission*
2030 Kanawha Boulevard, East
Charleston, West Virginia  25311
Telephone: (304) 343-4401
Facsimile: (304) 343-4405
kwthompsonwv@gmail.com
drbarneywv@gmail.com

**BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, PC**

/s/ Van Bunch
Van Bunch, Esquire W.V. No. 10608
*Attorney seeking pro hac vice admission*
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 274-1100
Facsimile: (602) 274-1199
vbunch@bffb.com

**LAW OFFICES OF P. RODNEY
JACKSON**
<u>/s/ P. Rodney Jackson</u>
P. Rodney Jackson (W.V. No. 1861)
*Attorney seeking pro hac vice admission*
401 Fifth-Third Center
700 Virginia Street, East
Charleston, West Virginia 25301
Telephone: (843) 780-6879
Facsimile: (304) 345-7258
prodjackson27@yahoo.com

**ATTORNEYS FOR PLAINTIFFS**