United States District Court
Southern District of Texas

**ENTERED**

June 21, 2023

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRYANT, *et al.*, | § | |
| *Plaintiffs*, | § | |
| | § | |
| | § | |
| v. | § | No. 4:19-cv-01708 |
| | § | |
| INTERCONTINENTAL | § | |
| TERMINALS COMPANY LLC, | § | |
| *et al.*, | § | |
| *Defendants*. | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| *IN RE*: INTERCONTINENTAL | § | |
| TERMINALS COMPANY, LLC | § | No. 4:19-cv-01460 |
| DEER PARK FIRE LITIGATION | § | |
| | § | |
| | § | |

## **MEMORANDUM & ORDER**

Pending before the Court are Plaintiffs' Motion for Class Certification, ECF No. 39; Plaintiffs' Motion to Exclude Opinions and Testimony of Defendants' Expert Paolo Zannetti, ECF No. 37; Defendants' Motion to Exclude Plaintiffs' Air Modeling Expert William Auberle, ECF No. 41; and Defendants' Motion to Exclude Plaintiffs' Toxicology Expert S. Thomas Dydek, ECF No. 42.[1] The Court held two days of hearings on these motions.

---

[1] On December 1, 2022, based on the parties' consent, the case was deconsolidated from *In re ITC*, Case No. 4:19-cv-01460 and transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order Transferring, ECF No. 27. Although the motions addressed here were originally filed in *In re ITC*, Case No. 4:19-cv-01460, before deconsolidation, all docket numbers

In this case, proposed class representatives Amanda Bryant, Harn Lee, Silver's Andy Nails, Veronica Cantu, and Stephanie Ochoa (collectively, "Plaintiffs") seek economic damages from Intercontinental Terminals Company, LLC ("ITC") and NSK Corporation (collectively, "Defendants") for harms allegedly suffered from a fire at the ITC Deer Park, Texas facility. Plaintiffs have asserted causes of action for trespass, negligence, nuisance, manufacturing defect, design defect, and products liability. Plaintiffs ask the Court to certify a class "consist[ing] of the individuals residing in, and the businesses, governmental entities and schools located in, the isopleth[2] attached as Exhibit A2 during the ITC fires."[3] ECF No. 40 at 6. The parties also ask the Court to exclude expert opinions submitted in support of and against class certification. ECF Nos. 37, 41, 42.

The primary issue before the Court is whether Plaintiffs' proposed class satisfies the requirements for certification under Rule 23 of the Federal Rules of Civil Procedure. The *Daubert* motions are relevant only to the extent Plaintiffs rely on an expert's report or testimony in support of the class certification motion. Based on the briefing, applicable law, counsel's arguments at the December 2nd and 13th,

---

refer to corresponding docket numbers in *Bryant, et al. v. Intercontinental Terminals Company, LLC, et al.*, Case No. 4:19-cv-01708.

[2] An isopleth is a line drawn on a map connecting points having the same numerical value of some variable. *Nat. Res. Def. Council, Inc. v. Evans*, 232 F. Supp. 2d 1003, 1034 n.5 (N.D. Cal. 2002).

[3] In the alternative, Plaintiffs ask the Court to certify a class consisting of "individuals residing in, and the businesses, governmental entities and schools located in Deer Park and Galena Park, Texas, subject to the order to Shelter-In-Place due to the ITC fires." Mem. in Support of Mot. for Class Cert., ECF No. 40 at 6.

2022 hearings, and the extensive evidence presented, the Court finds that, even assuming the *Daubert* motions were denied, Plaintiffs have failed to carry their burden of satisfying the Rule 23 requirements.[4] If the class were certified, the Court finds that individual issues would predominate over common questions because resolving Plaintiffs' claims would require individualized inquiries into causation and damages that would overwhelm common questions. Further, because Plaintiffs' motion for class certification is denied, the parties' motions to exclude expert testimony are also denied as moot.

## I.    BACKGROUND

### A. Factual and Procedural Background.

This action concerns a fire at ITC's Deer Park, Texas facility that burned from March 17, 2019 to March 20, 2019 (the "ITC Fire"). Deer Park Fire Updates Excerpt, ECF No. 52-1. During the fire, fifteen storage tanks burned, containing a variety of chemicals, including naphtha (a flammable liquid hydrocarbon mixture), xylene (a solvent and cleaning agent), GBS (gas blend stock, a complex mixture of hydrocarbons), and lubricant oils (a complex mixture of low and high molecular weight hydrocarbons). Second Am. Compl., ECF No. 35 at ¶ 27.

---

[4] Plaintiffs' Opposition to Motion to Exclude Dydek, ECF No. 43; Defendants' Reply in Support of Motion to Exclude Dydek, ECF No. 51; Plaintiffs' Opposition to Motion to Exclude Auberle, ECF No. 45; Defendants' Reply in Support of Motion to Exclude Auberle; Defendants' Opposition to Motion to Exclude Zannetti, ECF No. 46; Plaintiffs' Reply in Support of Motion to Exclude Zannetti, ECF No. 49; Defendants' Opposition to Motion for Class Certification, ECF No. 52; Plaintiffs' Reply in Support of Motion for Class Certification, ECF No. 58.

In response to the fire, the cities of Deer Park and Galena Park issued shelter-in-place orders. Deer Park issued two separate orders, one on March 17, 2019, and another on March 21, 2019. Deer Park Fire Updates Excerpt at 3-4, ECF No. 52-1. In relevant part, the March 21, 2019 Deer Park shelter-in-place order provided that there were reports of "action levels of benzene or other volatile organic compounds (VOCs) within city limits." *Id*. at 3. It further directed Deer Park residents to go inside immediately, close all doors and windows, and take steps to prevent vapors from entering residents' homes. *Id*. Galena Park also issued a shelter-in-place order on March 21, 2019. March 21, 2019 Tweet from City of Galena Park, ECF No. 52-2.

Following the ITC Fire, Plaintiffs filed a class action complaint, asserting six causes of action: (1) trespass; (2) negligence; (3) nuisance; (4) manufacturing defect; (5) design defect; and (6) products liability (seller). ECF No. 35 at 1. Plaintiffs seek to recover use and enjoyment damages, property damages, annoyance and inconvenience damages, as well as lost profits and wages. *Id*. at 24. Plaintiffs do not seek any recovery for personal injury. ECF No. 40 at 7. Plaintiffs allege that particulate matter from the ITC Fire was deposited on their property—both dwellings and places of businesses—and that they suffered damages as a result.

### B. Plaintiffs' Proposed Class.

Plaintiffs' motion asks the Court to certify a class consisting of all individuals residing in, and the businesses, governmental entities and schools located in, an area that they claim received a ground-level concentration of particles at a rate of one gram per square meter (the "Class Area"). ECF No. 40 at 6; Auberle Expert Rept. at 6, ECF No. 41-3. The Class Area is 83.86 square miles. Bergin & Mims Expert Rept. at 16, ECF No. 52-3. Approximately 190,000 individuals reside in, and between 2,500 and 3,500 businesses are located within, the Class Area. Gilbert Expert Rept. at 3, ECF No. 40-2. Less than 24% of individuals and 21% of businesses in the Class Area were subject to shelter in place orders. Bergin & Mims Expert Rept. at 18-19, ECF No. 52-3.

Individuals residing within the Class Area are employed in a variety of industries. The top three industries of employment are services, construction, and manufacturing. Bergin & Mims Expert Rept. at 27, ECF No. 52-3. There is also significant diversity among the businesses in the class area. *Id*. at 36.

## II.     THE LEGAL STANDARD FOR EXPERT TESTIMONY.

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Under Rule 702, the Court must act as a gatekeeper, "ensur[ing] that proffered expert testimony is 'not only relevant, but reliable.'" *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). To discharge this gatekeeping function, the Court "must make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Id*. (quoting *Daubert*, 509 U.S. at 592–93). "In assessing the 'reliability' of an expert's opinion, the trial court may consider a list of factors including: 'whether a theory or technique . . . can be (and has been) tested,' 'whether the theory or technique has been subjected to peer review and publication,' 'the known or potential rate of error,' 'the existence and maintenance of standards,' and 'general acceptance' of a theory in the 'relevant scientific community.'" *Hinson v. Dorel Juvenile Group, Inc.*, 2016 WL 3199353, at *1 (E.D. Tex. June 9, 2016) (quoting *Daubert*, 509 U.S. at 593–94). Other relevant factors include whether the expert's theory came from litigation or independent research, whether there is a large analytical gap between the data and opinion such that the theory does not "fit" the case, and whether the expert considered alternative explanations. FED. R. EVID. 702 advisory committee's note to 2000 amendment.

District courts need not "'admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Still, courts must be careful not to use admissibility to improperly supplant a party's right to trial by jury. *Earl v. Boeing Co.*, 2021 WL 3140545, at *2 (E.D. Tex. July 26, 2021) (citing *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)). The party offering the expert must prove "'by a preponderance of the evidence that the testimony is reliable,' not that it is correct." *Swanston v. City of Plano, Tex.*, 2021 WL 327588, at *2 (E.D. Tex. Feb. 1, 2021) (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). The trial judge's discretion "will not be disturbed on appeal unless manifestly erroneous." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997) (cleaned up).

## III.   THE PARTIES' MOTIONS TO EXCLUDE EXPERTS AUBERLE, DYDEK, AND ZANETTI ARE DENIED AS MOOT.

Plaintiffs' air modeling expert William Auberle opines that one gram per square meter of particulate matter was deposited over an 84-square-mile area from the ITC Fire. *See* Auberle Expert Rept., ECF No. 41-3. Auberle, an environmental engineer with over fifty years of experience,[5] used AERMOD to model the deposition of particulate matter from the ITC Fire. *Id*. at 3-4. Defendants argue that

---

[5] Defendants do not challenge Auberle's qualifications to offer opinions regarding the deposition of particulate matter.

Auberle's opinion is unreliable because he (1) used arbitrary inputs for his model; (2) did not undertake any sensitivity or uncertainty analyses; (3) ignored available data from other sources; and (4) the one gram per square meter of particulate matter threshold selected for the Class Area was arbitrary. ECF No. 41 at 6-7. Plaintiffs primarily respond that Defendants' complaints should go to weight and not admissibility. ECF No. 45 at 9. Although the Court denies Defendants' motion as moot, there are nonetheless significant issues with Auberle's opinion that call into question its reliability.

An expert's opinion may not be based on "unsubstantiated assertions" and "insufficient, erroneous information." *Loy v. Rehab Synergies, LLC*, 558 F. Supp. 3d 402, 409 (S.D. Tex. 2021) (finding opinion unreliable where underlying data did not accurately reflect evidence in case). Importantly, Auberle's one gram per square meter threshold does not appear to have been chosen for scientific reasons. Auberle testified that he selected this threshold because the deposition of particulate matter would be visible on horizontal surfaces at that value. Auberle Dep. 171:1-12, ECF No. 41-16. Auberle was unable to identify any literature or studies that supported one gram per square meter as the threshold for visibility. *Id*. at 171:16-173:5. Furthermore, Auberle testified that "a much lower value would be a meaningful threshold in terms of impact," *id*. at 171:21-172:4, and that he did not choose a lower

8

value because doing so would yield an unwieldy result for class action litigation, *id.* at 171:1-12.

Therefore, instead of choosing the one gram per square meter threshold for a scientific reason, Auberle chose the threshold because he thought it would be reasonable for litigation purposes. Thus, Auberle's unscientific selection of this threshold would weigh in favor of exclusion. *See In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2022 WL 17480906, at *139 (S.D. Fla. Dec. 6, 2022) (finding that failure to base opinion on "objective, scientific-based criteria" weighed in favor of exclusion).

Auberle's selection of inputs for his model also calls into question the reliability of his opinions. An expert's opinion will be unreliable if based on evidence that did not exist or erroneous information. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009) (affirming exclusion of expert report based on erroneous information, *i.e.*, slides that did not exist.); *Coffey v. Dowley Mfg., Inc.*, 89 F. App'x 927, 931 (6th Cir. 2003) (excluding expert opinion in part because it was based on erroneous assumption regarding underlying facts). Here, Auberle originally testified that he chose an input of 12.5 meters for the stack diameter in his model because that was the diameter of the storage tanks that caught on fire. Auberle Dep. 139:4-13, ECF No. 41-16. However, later in his deposition, Auberle admitted that the diameter of the storage tanks was thirty-three meters. *Id.*

at 145:4-12. Therefore, Auberle's input of 12.5 meters for stack diameter was based on an erroneous assumption of the underlying facts, which would weigh in favor of excluding his report.

Finally, Auberle's inputs for the number of stacks and their configuration into his model appears to be arbitrary. Courts have found that where an expert's opinion relies on assumed values, "the selection of [such] values [must] be validated by at least minimal testing." *Mohney v. USA Hockey, Inc.*, 300 F. Supp. 2d 556, 571 (N.D. Ohio 2004), *aff'd*, 138 F. App'x 804 (6th Cir. 2005) (excluding a portion of expert opinion). Auberle chose to input seven stacks into AIRMOD to model the ITC Fire, but the basis for his selection of seven stacks is unclear. In all, fifteen tanks were destroyed by the fires, two of which were empty. Auberle Expert Rept. at 3, ECF No. 41-3. During his deposition, Auberle testified that he chose seven for his model because "[i]t was greater than 1 and less than 13," Auberle Dep. 139:1-3, ECF No. 41-16, and although he could have chosen a different number, Auberle thought that seven was "a reasonable approximate of the conditions," *id.* at 138:17-25. Compounding the issue, Auberle performed no testing to understand the impact his assumption of seven stacks would have on the model. *Id.* at 133:12-13. At the hearing, counsel argued that seven was approximately half the number of stacks and therefore was a reasonable and conservative number. Class Cert. Hrg. Tr. at 81:22-82:11 (Dec. 13, 2022), ECF No. 31 ("I think we can infer that between means it's in

the middle between 1 and 13."). Again, counsel has no data to support such an argument and counsel's rationale cannot replace or supplement the expert's stated rationale and analysis. *See Stragent, LLC v. Intel Corp.*, No. 6:11-CV-421, 2014 WL 1389304, at *4 (E.D. Tex. Mar. 6, 2014) (excluding testimony that relied on "arbitrary assumption").

Auberle also chose to locate the seven stacks near the centroid of the site even though the area in which the thirteen full tanks burned was larger than the centroid. Auberle Dep. 83:25-84:2, 140:2-5, ECF No. 41-16. The reason he proffered for making this decision was an attempt to be cautious and limit the size of the Class Area. *Id*. at 83:23-84:18. Once again, Auberle allowed litigation concerns to impact his analysis and undermine its reliability. *See Zantac*, 2022 WL 17480906, at *139 (finding the use of a "conclusion-oriented process to select the inputs" to weigh in favor of exclusion). During his deposition, Auberle testified that if redoing the model, he would have "placed the stacks even further from the centroid than what [he] did," although he did not know the impact this would have on the model's output. Auberle Dep. 155:4-10, ECF No. 41-16. This testimony underscores the arbitrary nature of how Auberle chose to locate the stacks in his model and weighs in favor of exclusion.

Because Plaintiffs' proposed class fails to satisfy Rule 23's requirements even if Auberle's report is not excluded, the Court denies Defendants' motion to exclude

Auberle, ECF No. 41, as moot. For the same reason, the Court also denies Plaintiffs'

motion to exclude Zannetti, ECF No. 37, and Defendants' motion to exclude Dydek,

ECF No. 42, as moot.

## IV.    THE LEGAL STANDARD FOR CLASS CERTIFICATION.

A class action is "an exception to the usual rule that litigation is conducted by

and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S.

682, 700–01 (1979). To ensure that this exception is only deployed in appropriate

cases, Rule 23 provides a series of requirements. "A district court must conduct a

rigorous analysis of the rule 23 prerequisites before certifying a class." *Cleven v.

Mid-Am. Apartment Communities, Inc.*, 20 F.4th 171, 176 (5th Cir. 2021) (quoting

*Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)). "'[T]he district court

maintains great discretion in certifying and managing a class action.'" *Frey v. First

Nat. Bank Sw.*, 602 F. App'x 164, 167 (5th Cir. 2015) (quoting *Mullen v. Treasure

Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)). "The party seeking class

certification bears the burden of establishing that Rule 23 is appropriate." *Prantil v.

Arkema France S.A.*, No. 4:17-CV-02960, 2022 WL 1570022, at *27 (S.D. Tex.

May 18, 2022) (quoting *Maldonado v. Ochsner Clinic Foundation*, 493 F.3d 521,

523 (5th Cir. 2007)).

## V.    PLAINTIFFS' CLAIMS DO NOT SATISFY THE REQUIREMENTS FOR CLASS CERTIFICATION.

Under the Rule 23 framework, Plaintiffs must satisfy the four threshold

requirements of Rule 23(a), as well as the requirements of Rule 23(b)(1), (2), or (3).

*Id*. The four threshold requirements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). In the Fifth Circuit, there is an additional, "implied prerequisite" under Rule 23 that the class of persons to be represented is ascertainable. *Hackler v. Tolteca Enterprises, Inc.*, No. SA-18-CV-911-XR, 2019 WL 7759523, at *2 (W.D. Tex. Sept. 9, 2019) (citing *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)). Here, Plaintiffs seek certification under Rule 23(b)(3). This provision permits certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

### A. Plaintiffs Satisfy the Rule 23(a) Requirements.

Plaintiffs argue that they have satisfied their burden of showing ascertainability, numerosity, commonality, typicality, and adequacy. Although Defendants do not contest that Plaintiffs have met their burden to show numerosity

13

and commonality, they contend that Plaintiffs have not met their burden with respect to ascertainability, typicality, and adequacy. As it is Plaintiffs' burden to show that their proposed class satisfies the Rule 23(a) requirements, the Court addresses each element.

### 1. *Plaintiffs' proposed class is ascertainable.*

"[T]o maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Cleven*, 20 F.4th at 176 (quoting *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012)). "'However, the court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding.'" *Frey*, 602 F. App'x at 168 (quoting William B. Rubenstein, Newberg on Class Actions § 3:3 (5th ed. 2011)).

Plaintiffs argue that their proposed class satisfies this requirement because it would be "administratively feasible for the court to determine, based on objective and practical criteria, whether a person is or is not a member of the class.'" ECF No. 58 at 23 (citing *Ictech-Bendeck v. Progressive Waste Solutions of LA, Inc.*, 2019 WL 4111681, at *6 (E.D. La. Aug. 29, 2019)). Defendants respond that the class definition proposed does not meet the ascertainability requirement because it is based on flawed modelling and the one gram per square meter threshold is arbitrary. ECF No. 52 at 13.

Defendants cite to no authority, and the Court is unable to identify any Fifth Circuit decisions requiring courts to evaluate the *merits* of plaintiffs' proposed class definition when determining whether a proposed class is ascertainable.[6] The question before the Court in evaluating ascertainability is whether "'at some stage of the proceeding … the class is adequately defined and clearly ascertainable.'" *Seeligson v. Devon Energy Prod. Co., L.P.*, 761 F. App'x 329, 334 (5th Cir. 2019) (quoting *Union Asset*, 669 F.3d at 638). Plaintiffs' proposed class has geographic and temporal limitations such that members of the class can be readily identified. *See In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 133 (E.D. La. 2013) (finding that settlement class with geographic limitations satisfied ascertainability); *In re Train Derailment Near Amite Louisiana*, No. 2:03–md–01531, 2006 WL 1561470, at *14 (E.D. La. May 24, 2006) (finding that class with geographic limitations was ascertainable). Therefore, the Court finds that Plaintiffs' proposed class is ascertainable.

### 2. *Plaintiffs' proposed class satisfies the numerosity requirement.*

The numerosity requirement is met when the joinder of all members is impracticable. FED. R. CIV. P. 23(a)(1). An assertion that the class is too numerous

---

[6] Nonetheless, there is a rational relationship between Plaintiffs' proposed class definition and the evidence presented. As Auberle testified, the one gram per square meter threshold purportedly was based on the visibility of particulate matter on surfaces. Auberle Dep. 171:1-12, ECF No. 41-16. Further, Auberle's model purports to show the geographic area upon which this amount of particulate matter was deposited. Isopleth, ECF No. 40-1.

to make joinder impracticable without some evidence or reasonable estimate of the number of purported class members is not sufficient. *Guenther v. BP Ret. Accumulation Plan*, No. 4:16-CV-00995, 2021 WL 1216377, at *4 (S.D. Tex. Mar. 12, 2021), *report and recommendation adopted*, No. 4:16-CV-00995, 2021 WL 1215851, at *1 (S.D. Tex. Mar. 31, 2021) (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981)). However, plaintiffs need not establish the exact number of potential class members to meet the numerosity requirement. *Quinan v. Jet Lending, LLC*, No. 4:21-CV-02296, 2022 WL 716668, at *3 (S.D. Tex. Mar. 10, 2022) (citing *Smith v. Texaco, Inc.*, 88 F.Supp.2d 663, 674 (E.D. Tex. 2000)). The Fifth Circuit has held that though the number of class members alone is not determinative of whether joinder is impracticable, a class consisting of 100 to 150 members is within the "range that generally satisfies the numerosity requirement." *Bear Creek Bible Church v. Equal Emp. Opportunity Comm'n*, 571 F. Supp. 3d 571, 603 (N.D. Tex. 2021) (quoting *Mullen*, 186 F.3d at 624).

Plaintiffs argue that numerosity is satisfied because the Class Area encompasses approximately 190,000 individuals and between 2,500 and 3,500 businesses. ECF No. 40 at 10 (citing *Steward v. Janek*, 315 F.R.D. 472 (W.D. Tex. 2016) (where proposed class would number in thousands, these individuals could not be joined and numerosity prerequisite is met)); Gilbert Expert Rept. at 3, ECF No. 40-2. Defendants do not contest this issue.

16

Accordingly, because the evidence shows that the class is substantially larger than the 100-to-150-member threshold, the Court finds that Plaintiffs' proposed class satisfies the numerosity requirement.

### 3. *Plaintiffs' proposed class satisfies the commonality requirement.*

Rule 23(a)(2) allows a class action to be maintained if "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "Under *Duke*s—which heightened the standards—all of the class member's claims [must] depend on a common issue . . . whose resolution will resolve an issue that is central to the validity of each one of the class member's claims in one stroke." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 547 (5th Cir. 2020) (internal citations and quotations omitted).

Plaintiffs argue that common issues of law and fact are shared amongst the proposed class. Specifically, as Plaintiffs' claims concern a single mass accident, they share the issue of whether and to what extent Defendants are liable for their alleged injuries. ECF No. 40 at 12-13 (citing *Deepwater Horizon*, 295 F.R.D. at 136 ("some variation in damages resulting from this single incident does not defeat the commonality inquiry")). Defendants do not contest this issue.

To determine liability for Plaintiffs' claims, the trier of fact will have to answer how the ITC Fire started and who was responsible. This question is central

17

to Plaintiffs' trespass, negligence, nuisance, and product liability claims. Therefore, the Court finds that the commonality requirement is satisfied.

### *4. Plaintiffs' proposed class satisfies the typicality requirement.*

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," FED. R. CIV. P. 23(a)(3), and "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 718 (S.D. Tex. 2021) (quoting *Mullen*, 186 F.3d at 625). The test for typicality is not demanding. *Id.* "Typicality does not require identity of claims but does require that 'the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.'" *Bear Creek Bible Church*, 571 F. Supp. 3d at 605 (quoting *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)).

Plaintiffs argue that the claims of the proposed class representatives are typical because "Plaintiffs and all members of the Class assert identical theories of liability, and each of the common causes of action and identical theories of liability is predicated on singular and identical conduct, namely, the release of airborne smoke and other hazardous materials from the ITC Facility by the Defendants." ECF No. 40 at 13 (citing *Hernandez v. City of Houston*, Texas, 2019 WL 2869157, at *4

18

(S.D. Tex. Jul. 3, 2019) (plaintiffs' claims are typical where they arise from an "identical factual predicate" and/or same course of conduct and premised on same legal theory)). Further, all members of the class were subject to the same "harmful and disruptive emissions and experienced loss of use of property, annoyance and inconvenience, and displacement and disruption to their daily lives." *Id.*

In response, Defendants argue that the representative plaintiffs are sufficiently distinct from the proposed class that they cannot satisfy typicality. In support of this argument, Defendants point to several demographic characteristics of individual representative plaintiffs, including that they are all women with children in the service industry, and, therefore, not typical of the proposed class. ECF No. 52 at 38-39.[7] Similarly, Defendants argue that Silver's Andy Nails, the sole named business plaintiff, a nail salon, is not typical of the businesses located within the isopleth. ECF No. 52 at 39-40.[8]

---

[7] Defendants argue that representative plaintiffs are not typical because more than half of the households in the proposed class area do not have children, Bergin & Mims Expert Rept. at 43, ECF No. 52-3, around fifty percent are men, *id.* at 43-44, and are not employed in the service industry, *id*.

[8] Defendants explain that there are only nineteen personal service care businesses located in the proposed class area. Gilbert Expert Rept. at 13, ECF No. 40-2. Defendants also argue that Silver's Andy Nails is not typical of the proposed class because it is not physically located in the Class Area. ECF No. 52 at 40. Plaintiffs take issue with this characterization, asserting that Silver's Andy Nails falls within the Class Area. ECF No. 58 at 9 (citing Auberle Dep. 11:13-13:16, ECF No. 58-1). During his deposition, Auberle testified that, to reach this conclusion, he performed additional analysis in response to Defendants' expert Zanetti's report. Auberle Dep. 12:3-13:16, ECF No. 41-16. This additional work was not submitted in connection with Plaintiffs' motion for class certification, and, at the time of Auberle's deposition, had not been provided to Defendants. *Id*. However, during oral argument on December 13, 2022, Plaintiffs' counsel appeared to concede

Defendants' arguments are not supported. Defendants rely on cases where courts found that typicality was not satisfied because class representatives' *claims* were not typical of the proposed class. ECF No. 52 at 38 (citing *In re FIRSTPLUS Fin., Inc.*, 248 B.R. 60, 75 (Bankr. N.D. Tex. 2000) (finding typicality not met where class representatives and proposed class members asserted "[v]arious types of fraud"); *Martin v. Home Depot U.S.A.*, Inc., 225 F.R.D. 198, 201 (W.D. Tex. 2004) (finding that class representatives and class asserted claims for different types of product defects)). Defendants do not argue that the class representatives here assert claims or are subject to defenses not typical of the proposed class, nor can they.

Instead, for individual class representatives, Defendants point to differences that "impact an analysis of loss of income and loss of right to use and enjoy property." ECF No. 52 at 38. The same is true for the business class representative, Silver's Andy Nails. *Id*. at 39-40 ("From an economic loss perspective, the leased nail salon typically open seven days a week that only closed one day on March 21"). However, "differences in the extent of injury between class representatives and unnamed class members does not defeat certification." *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 297–98 (5th Cir. 2001) (affirming district court's

---

that Silver's Andy Nails, located on the far side of a strip center that was partially inside the isopleth, was outside of the isopleth, arguing that the difference in deposition of particulate matter was so de minimis that it should be considered within the isopleth. Class Cert. Hrg, Tr. at 201:3-16 (Dec. 13, 2022), ECF No. 31. In any case, as the Court decides this motion on other grounds, it need not resolve this disagreement between the parties. However, if Silver's Andy Nails is not located within the isopleth, it would not be an adequate class representative.

decision to certify a class because "although some theories about damages may differ, all plaintiffs share the same theories of liability"); *see also Betances v. Fischer*, No. 11-CV-3200 (RWL), 2022 WL 765963, at \*15 (S.D.N.Y. Mar. 14, 2022) (variations in the extent of injury do not defeat typicality).

"The critical inquiry is whether Plaintiffs' claims have 'the same essential characteristics of those of the putative class.'" *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). Here, the class representatives and the proposed class "share the same essential characteristics, share the same theory of liability and are based on substantially the same facts." *Williams v. Lakeview Loan Servicing, LLC*, No. 4:20-CV-1900, 2022 WL 1216577, at \*7 (S.D. Tex. Feb. 8, 2022) (internal quotation marks omitted). Simply put, "there is nothing in Rule 23(a)(3) which requires named plaintiffs to be clones of each other or clones of other class members." *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1036 (N.D. Miss. 1993); *see also U.S. Navy SEALs 1-26 v. Austin*, 594 F. Supp. 3d 767, 781 (N.D. Tex. 2022) ("factual circumstances need not be identical for each of the class members").

Thus, the named Plaintiffs satisfy the typicality requirement.

### 5.  *Class representatives satisfy the adequacy requirement.*

The adequacy requirement under Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The question of adequacy can be broken up into three

21

subcategories: (1) "the zeal and competence of the representative[s'] counsel"; (2) "the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees"; and (3) the risk of "conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017).

Defendants do not challenge the adequacy of Plaintiffs' counsel. The evidence supports finding Plaintiffs' counsel are zealous and more than competent. They have substantial class action and complex litigation experience. Firm Resumes, ECF No. 40-16 (detailing experience of counsel). Furthermore, their zeal was demonstrated during oral argument on the *Daubert* motions and class certification motion.

For class representatives, the Fifth Circuit has "identified a 'generic standard' for the adequacy requirement, noting that 'the class representatives must possess a sufficient level of knowledge and understanding to be capable of controlling or prosecuting the litigation." *In re Chesapeake Energy Corp.*, 567 F. Supp. 3d 754, 773 (S.D. Tex. 2021) (quoting *Ibe v. Jones*, 836 F.3d 516, 529 (5th Cir. 2016)). A class representative is considered adequate when he has "familiarity with the complaint and with the concept of a class action." *Guenther*, 2021 WL 1216377, at *8 (quoting *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)).

Plaintiffs present evidence that the representative plaintiffs understand the

case and their role in it. ECF No. 40 at 14-16; Bryant Dep. 60:8-17, 70:24-71:6, ECF No. 40-11(testimony as to her role as a class representative and familiarity with the matter); Lee Dep. 11:16-12:7, ECF No. 40-12 (testimony regarding her understanding of her role as a class representative and that the case related to the ITC Fire); Cantu Dep. 22:19-26:18, ECF No. 40-13 (testimony regarding her role as a class representative and understanding of the lawsuit); Ochoa Dep. 28:18-29:4, 59:13-24, 226:4-12, 233:11-17, ECF No. 40-14 (testimony regarding her understanding of her role as a class representative and the damages sought by the class); Nguyen Dep. 117:19-118:2, 131:24-132:4, ECF No. 40-15 (testimony regarding her role as a class representative).

In response, Defendants make two arguments against the class representatives' adequacy.[9] First, they argue that Plaintiffs' claim splitting creates potential conflicts of interest and preclusion risks that prevent an adequacy finding. ECF No. 52 at 41-42. Second, they argue that Silver's Andy Nails is not sufficiently informed about the litigation to manage it. *Id*. at 42. The Court addresses each argument.

---

[9] Defendants also make two additional arguments: (1) that the class representatives are not adequate because they are "demographically different" from a large portion of the proposed class; and (2) "Plaintiffs also offer no representative on behalf of the minors in the putative class." ECF No. 1345 at 41. As Defendants offer no case law supporting either proposition, the argument is waived for inadequate briefing. *Boggs*, 376 F. Supp. 3d at 722 ("A party waives an issue if he fails to adequately brief it.").

### a. Claim splitting does not create an inappropriate conflict of interest.

In this case, Plaintiffs pursue only economic damages from the alleged effects of the airborne contaminants landing on their property. ECF No. 40 at 7. They do not pursue personal injury or other types of damages. *Id*. Without elaborating on what claims have been split or the claims the Plaintiffs have failed to assert, Defendants argue that, if Plaintiffs' economic loss damages class were to be certified, the potential res judicata effects of a judgment would create an impermissible conflict of interest between representative plaintiffs and members of the proposed class with unasserted claims. ECF No. 52 at 41-42. As explained below, the speculative nature of this argument coupled with the likelihood that impacted parties will opt out leads the Court to conclude that potential claim splitting does not preclude an adequacy finding.

"[D]eciding whether a class representative's decision to forego certain claims defeats adequacy requires an inquiry into, at least: (1) the risk that unnamed class members will forfeit their right to pursue the waived claim in future litigation, (2) the value of the waived claim, and (3) the strategic value of the waiver, which can include the value of proceeding as a class (if the waiver is key to certification)." *Slade*, 856 F.3d at 413.

As a general matter, it is difficult to quantify preclusion risk because "[a] court conducting an action cannot predetermine the res judicata effect of the judgment;

that effect can be tested only in a subsequent action." *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 396 (1996). In any case, the risk that certifying the class will have a preclusive effect is reduced because Rule 23(b)(3) allows plaintiffs to opt out of the class action. *Slade*, 856 F.3d at 414. Therefore, unnamed class members could opt out of Plaintiffs' proposed class to avoid any potential res judicata effect. The appearance of counsel for personal injury claimants at the December 13, 2022 hearing underscores this analysis. Personal injury plaintiff's counsel asserted that they represented approximately 13,000 clients who had either filed suit or signed a tolling agreement. Class Cert. Hrg, Tr. at 195:13-22 (Dec. 13, 2022), ECF No. 31. They further represented that all their clients would opt out if the Court were to certify Plaintiffs' proposed class. Likewise, the Court takes judicial notice that several businesses have filed individual suits asserting claims for significant economic damages allegedly resulting from the ITC Fire. *See, e.g.*, Charlotte Owners Inc., Clean Harbors Environmental Services Inc., O'Rourke Marine Services, LLC, and Waterways Tankers Inc., *In re ITC*, 4:19-cv-1460. These business plaintiffs would also likely opt out of this case if it were certified.

Further, the value of the unasserted personal injury claims appears to be minimal in this case. The ITC Fire was an event garnering significant media attention. The plaintiffs' attorneys actively sought out potential personal injury plaintiffs. As the personal injury claimants counsel further argued, any plaintiffs

with valuable personal injury claims have already brought their claims. Class Cert. Hrg, Tr. at 196:11-18 (Dec. 13, 2022), ECF No. 31. Therefore, it is unlikely that personal injury plaintiffs' claims of value have not been asserted.

Finally, the strategic value of splitting economic and personal injury claims is arguably significant here. As counsel for Plaintiffs conceded at oral argument, it would be exceedingly unlikely that the Court would certify a personal injury class in this context. Class Cert. Hrg, Tr. at 8:4-10 (Dec. 13, 2022), ECF No. 31.

Thus, any claim splitting does not create a barrier for class certification.

### b. Silver's Andy Nails is an adequate class representative.

Defendants contend that Silver's Andy Nails corporate representative, Ms. Nguyen, "is neither sufficiently informed about the litigation to manage it, nor is she directing the litigation." ECF No. 52 at 42. This distorts the standard applicable to finding adequacy under Rule 23. Class representatives will be found to be adequate if they "possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation." *Ibe*, 836 F.3d at 529 (quoting *Berger*, 257 F.3d at 482–83). Therefore, Defendants' arguments regarding Ms. Nguyen deferring to counsel regarding decision-making in the litigation are unavailing. ECF No. 52 at 42.

Because Ms. Nguyen is not a native English speaker, the transcript is not

entirely clear on certain points regarding Ms. Nguyen's level of knowledge.[10] Nevertheless, Ms. Nguyen demonstrated sufficient knowledge and willingness to serve as a class representative. Ms. Nguyen understood (1) that this case concerns the ITC Fire's impact, Nguyen Dep. 133:15-23, ECF No. 52-10; (2) that she would be acting as the class representative for other businesses the ITC Fire impacted, *id*. at 134:9-13; and (3) what damages the class was seeking, *id*. at 93:2-94:11. Furthermore, less is expected of class representatives in smaller dollar value cases since they do not have a "sufficient stake to be closely involved in the litigation." *In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.*, 851 F.Supp.2d 1040, 1057 (S.D. Tex. 2012). Despite being a small business owner, Ms. Nguyen was willing to sit for a deposition that began at 9:04 am and concluded at 5:26 pm. Nguyen Dep. at 3, ECF No. 52-10. This investment of time is especially admirable considering the low value of Ms. Nguyen's claims.

The Court also takes judicial notice that businesses with high dollar value claims have filed individual actions. *See, e.g.,* First Am. Compl., ECF No. 820 at 13, *In re ITC*, 4:19-cv-1460 (O'Rourke Marine Services, LLC seeks damages of $682,785.00). Defendants understand that businesses with allegedly significant

---

[10] In particular, it is not clear whether Ms. Nguyen understood legal concepts versus legal terms. *Compare* Nguyen Dep. 20:11-16, ECF No. 52-10 (testifying that she did not understand what class representative meant *with id*. at 132:5-9 (testifying that she understands that her role as a class representative is to represent a group of similarly situated plaintiffs).

damages filed their own lawsuits against them and have been consolidated into the lead case. *Id*. Therefore, the value of any claims for the remaining unnamed potential business plaintiffs who have not brought individual actions is likely minimal, making Ms. Nguyen an adequate class representative for those businesses.

For these reasons, the Court finds that Ms. Nguyen is an adequate class representative.

### B. Plaintiffs' Proposed Class Does Not Satisfy the Requirements of Rule 23(b)(3).

Rule 23(b)(3) permits certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). "The predominance requirement 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Prantil v. Arkema Inc.*, 986 F.3d 570, 576 (5th Cir. 2021) (quoting *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016) (en banc)); *see* FED. R. CIV. P. 23(b)(3) ("the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members"). Predominance is a "far more demanding" hurdle than Rule 23(a)'s commonality requirement. *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 253 (5th Cir. 2020) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)). The Court must "consider predominance on a claim-

by-claim basis[.]" *Prantil*, 986 F.3d at 577.

Plaintiffs argue that common questions would predominate over individualized inquiries and that a class action is the superior vehicle to resolving the proposed class's claims. Plaintiffs propose a trial with separate liability and damages phases, where "common issues of Defendants' fault" may be tried together in Phase 1 and damages "can be tried in a streamlined process in a subsequent Phase of trial." ECF No. 40 at 19. However, Plaintiffs' motion fails to mention causation. *Id.* Defendants respond that predominance cannot be satisfied because "differences among the putative class members require individualized inquiry and preclude determination of causation and injury on a class-wide basis." ECF No. 52 at 16. As such, Defendants contend that "a class action is not a superior vehicle, as it would inevitably devolve into a series of individual minitrials." *Id*. at 33.

In a recent case presenting similar facts and claims, Judge Ellison denied a motion to certify the plaintiffs' proposed damages class. *Prantil*, 2022 WL 1570022, at *35. In that case, plaintiffs sought to certify a class of property owners asserting claims for negligence, trespass, and public nuisance, to recover damages for the diminished value of their property resulting from the deposition of materials from a fire at Arkema's Crosby facility. *Id*. The *Prantil* plaintiffs attempted to satisfy predominance as to causation and damages through the opinions of an expert linking diminution of property values to the fire. *Id*. at 30-31. However, Judge Ellison

excluded the expert's opinions and concluded that, without those opinions, the individualized evidence necessary for plaintiffs to prove their claims as to causation and damages defeated predominance. *Id*.

Here, Plaintiffs argue their case is distinguishable from *Prantil* because they do not seek damages for diminution of property values. ECF No. 58 at 19. Instead of relying on common evidence of causation and damages like the *Prantil* plaintiffs, Plaintiffs here hope to avoid the issue entirely. Plaintiffs propose a bifurcated trial plan that asks the Court to ignore causation and damages when considering predominance for liability. ECF No. 40 at 18-20.

However, as Judge Ellison aptly noted in *Prantil*, bifurcation cannot "manufacture predominance." 2022 WL 1570022, at *33. Plaintiffs' proposed bifurcated trial plan does not relieve them of their burden to show predominance as to causation and damages for each of their claims. The Court concludes that the same result is required here as in *Prantil* because Plaintiffs' claims for negligence, trespass, nuisance, and products liability require substantial individualized inquiries on causation and damages.[11] Furthermore, Plaintiffs' damages claims here are wider

---

[11] This result applies equally to Plaintiffs proposed alternative class "defined as individuals residing in, and the businesses, governmental entities and schools located in Deer Park and Galena Park, Texas, subject to the order to Shelter-In-Place due to the ITC fires." ECF No. 40 at 6 n.2. In any case, since this alternative class is not fully briefed but added in through a footnote, the Court finds that any argument based on this alternative definition has been waived. *Harris Cnty., Texas v. Eli Lilly & Co.*, No. CV H-19-4994, 2020 WL 5803483, at *3 (S.D. Tex. Sept. 29, 2020) ("Arguments raised only in a footnote may be waived.").

ranging than those of the *Prantil* plaintiffs. While the *Prantil* plaintiffs sought to recover damages only for the diminution of property values, Plaintiffs here seek to recover for all economic damages that they allege the ITC Fire caused, including loss of use and enjoyment of their property, property damages, loss of income from missed days of work, lost profits from business interruption, as well as annoyance and inconvenience damages. ECF No. 35 at 24. The breadth of the recovery Plaintiffs seek presents a multitude of individualized inquiries across the class that must be answered to determine causation and damages.

### 1. *Plaintiffs' proposal for a bifurcated trial plan cannot manufacture predominance.*

Plaintiffs argue that, because Rule 23(c)(4) allows the class to reserve the determination of their entitlement to damages for a subsequent phase of trial, the "determination of the merits of each [c]lass member's claim will not turn on individualized factors." ECF No. 40 at 19. Plaintiffs essentially ask the Court to limit its predominance inquiry to Plaintiffs' proposed liability phase.[12] Plaintiffs argue

---

[12] Plaintiffs' proposed trial plan is threadbare at best. First, like Plaintiffs' motion, the proposed trial plan omits any mention of causation and is silent as to whether causation would be part of Plaintiffs' proposed first or second phase. Proposed Trial Plan, ECF No. 38. In their reply, Plaintiffs clarified that causation would be considered in their proposed second phase. ECF No. 58 at 14-15. Although Plaintiffs' proposed trial plan addresses damages in phase 2, it does not suggest any mechanism for determining damages. In their class certification briefing, Plaintiffs suggest that once bifurcated, damages can be determined during phase 2 through a damages jury trial, the appointment of a special master, other administrative methods, or bellwether trials. ECF No. 40 at 19-20. During oral argument, Plaintiffs' counsel also suggested that subclasses might be employed to determine damages. Class Cert. Hrg, Tr. at 205:9-206:17 (Dec. 13, 2022), ECF No. 31. In the Fifth Circuit, such a "figure-it-out-as-we-go-along approach" is "to be avoided." *Prantil*, 986 F.3d at 578.

that the Court should eschew an analysis of causation and damages, asserting that proving each "will be a relatively straightforward inquiry." ECF No. 58 at 13.

Plaintiffs' conclusory assertion that determining causation and damages will be straightforward is without merit. Even if it were correct, in the Fifth Circuit, the predominance inquiry "requires assessing all the issues in a case—including [causation and] damages—and deciding whether the common ones will be more central than the individual ones." *Crutchfield v. Sewerage and Water Board of New Orleans*, 829 F.3d 370, 378 (5th Cir. 2016). The Fifth Circuit has foreclosed Plaintiffs' proposed approach, ruling that "[a] district court cannot manufacture predominance through the nimble use of bifurcation." *Ibe*, 836 F.3d at 531 (quoting *Castano*, 84 F.3d at 745 n.21); *accord Prantil*, 2022 WL 1570022, at *31 (same). Absent this rule, bifurcation would swallow the predominance inquiry and "the result would be automatic certification in every case where there is a common issue." *Galitski v. Samsung Telecommunications Am., LLC*, No. 3:12-CV-4782-D, 2015 WL 5319802, at *14 n.16 (N.D. Tex. Sept. 11, 2015) (quoting *Castano*, 84 F.3d at 745 n. 21.).

Therefore, the Court must evaluate whether Plaintiffs' negligence, trespass, nuisance, and products liability claims satisfy predominance—including as to causation and damages.

### 2. *Plaintiffs fail to carry their burden of showing that common questions predominate over individual ones with respect to causation.*

Causation is an element of Plaintiffs' claims for negligence, trespass, private nuisance, and product liability. Plaintiffs failed to satisfy their burden to show that common questions predominate over individual inquiries with respect to causation for each of these claims. In fact, the word causation does not even appear in Plaintiffs' motion. ECF No. 40. Nor is causation addressed in Plaintiffs' proposed trial plan. ECF No. 38. In their reply, Plaintiffs offered less than three pages of argument on causation. ECF No. 58 at 13-15. Even if those three pages were persuasive, arguments raised for the first time in a reply brief are insufficient to cure a deficient motion. *Lee v. Samsung Elecs. Am.*, Inc., No. 4:21-CV-1321, 2022 WL 4243957, at *9 (S.D. Tex. Sept. 13, 2022) (citing *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016)). Therefore, Plaintiffs failed to carry their burden to show predominance with respect to each of their claims and Plaintiffs' motion for class certification fails on this basis alone. Nevertheless, the Court analyzes the predominance factor for each claim.

### 3. **Individual causation and damages inquiries predominate over common questions regarding Plaintiffs' negligence claims.**

The elements of a negligence action are (1) duty, (2) breach, (3) causation, and (4) damages. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 178 (5th Cir. 2018)

(quoting *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)). The Court finds that proving causation and damages for Plaintiffs' negligence claims requires individualized inquiries that will predominate.

> i. *Individual questions predominate over common ones for causation.*

For each member of the purported class, Plaintiffs will have to show that Defendants' negligence "in causing the [ITC Fire] was proximately connected to the specific injuries complained of." *Robertson v. Monsanto*, 287 F. App'x 354, 362 (5th Cir. 2008) (holding that individualized issues on causation and damages barred certification). Plaintiffs concede that, under their proposed trial plan, causation will need to be tried individually. ECF No. 58 at 14-15 ("individual issues of injury, proximate causation and actual damages to be tried individually."). However, Plaintiffs contend that this necessary individualized inquiry does not defeat predominance because "causation is not complicated in a single-event, single-location mass tort action such as this one." ECF No. 58 at 13. Plaintiffs provide no support for this assertion.

Quite to the contrary, Judge Ellison concluded in *Prantil*, which also involved a "single-event, single-location mass tort," that individualized questions regarding causation were sufficient to defeat a finding of predominance for negligence. 2022 WL 1570022, at *30-35. The Court agrees.

34

First, the Court is not convinced that proving causation in this case will not be complicated. Plaintiffs seek to recover economic damages for, among other things, property damage, lost wages, and business profits for their negligence claims. For property damages, Plaintiffs will have to show that the deposition of particulate matter caused damage to particular properties. Plaintiffs do not identify any simple method for doing so and the Court is aware of none. For lost wages and profits, Plaintiffs will have to show that the ITC Fire caused individual members of Plaintiffs' proposed class to miss work or lose business profits. Again, Plaintiffs identify no method for doing so, much less a simple one. Moreover, even if simple individualized proof could satisfy causation, the size of the class is such that these individualized questions would risk overwhelming common ones—190,000 individuals and 3,000 businesses. Gilbert Expert Rept. at 3, ECF No. 40-2. Given the sheer volume of individualized proof necessary to prove causation for thousands of properties, individuals, and businesses, issues attendant to proving causation weigh heavily against finding predominance. *See Robertson*, 287 F. App'x at 362.

> ii.  *Individual questions predominate over common ones for damages.*

More concerning still is the individualized evidence Plaintiffs will need to present to prove damages. "[W]here individual damages cannot be determined by reference to a mathematical formula or calculation, the damages issue may predominate over any common issues shared by the class." *Prantil*, 2022 WL

1570022, at *32 (quoting *Regmund v. Talisman Energy USA, Inc.*, 2019 WL 2863926, at *7 (S.D. Tex. July 2, 2019)). This is particularly true where individual damages vary significantly across the class. *Earl*, 21 F.4th at 898-99 (finding that predominance would likely not be satisfied where the damages of individual class members varied substantially).

Plaintiffs assert that individual damages questions will not defeat predominance because "[m]any elements of a typical damage claim here can be shown by routine and simple proof – like receipts for property cleaning, car washes, replacement air filters, relocation and travel costs, lost wages and the like – leaving only bellwether trials to set reasonable parameters on annoyance and inconvenience damages." ECF No. 40 at 20. Plaintiffs do not support this assertion with any expert testimony or other evidence. Even if the Court accepted that simple proof could prove "many elements" of the damages claims, Plaintiffs do not contend that *all* elements would be established with simple proof. To illustrate the issues Plaintiffs' negligence claims present in calculating damages, the Court analyzes lost wages and lost profits below.

Defendants' expert Quentin Mimms's opinion is useful to understanding why calculating damages from lost wages would not be simple and would require substantial individualized inquiries. First, individuals will need to submit proof of their particular lost wages. This proof will vary among proposed class members

36

based on pay structure and consistency of earnings. For example, individuals who earn bonuses or sales commissions may be required to provide documentation of their earnings over a substantial period to account for the variable and fluctuating nature of their earnings. Bergin & Mims Expert Rept. at 50-51, ECF No. 52-3. Second, any lost wages would need to be adjusted for costs avoided by not attending work, such as gas, mileage, and parking. *Id.* at 51. Third, lost wages would have to be adjusted to account for any mitigation of damages, such as making up shifts missed due to the ITC Fire and earning money from other endeavors during the time in which the individuals were missing work. *Id.*

Calculating businesses' lost profit damages would also require highly individualized inquiries. As Mimms explained, calculating lost profits would require a review of a business's past performance to identify expected revenue during the time-period the ITC Fire affected it. Bergin & Mims Expert Rept. at 59-60, ECF No. 52-3. However, for less established businesses, past performance may not be sufficient to calculate lost profits and other proof, such as expert testimony, may be necessary. *Id.* at 60. Further, any calculation of lost profits would have to be adjusted for the costs the business avoided during the ITC Fire, for example, not incurring employee wages that they would have if they had not closed because of the ITC Fire. *Id.* at 62. An additional adjustment would have to be made to the extent losses were

mitigated by directing sales to another outpost of a business or rescheduling appointments that were cancelled because of the ITC Fire. *Id*.

The issues presented by these highly individualized inquiries necessary to calculate lost profits are compounded by the size and diversity of the class. According to Plaintiffs, the class consists of between 2,500 and 3,500 businesses. Gilbert Expert Rept. at 3, ECF No. 40-2. Therefore, the individualized inquiries necessary to determine lost profits would have to be made for thousands of businesses. These individualized inquiries would also be complicated because businesses in the Class Area represent numerous industry sectors requiring different lines of inquiry for each type of business. *Id*. at 36 (explaining that "[b]usinesses in the putative class come from every major classified industry sector except one").

Plaintiffs have failed to show that "questions of law or fact common to class members predominate over any questions affecting only individual members[.]" FED. R. CIV. P. 23(b)(3). Plaintiffs offer no way of proving causation and damages other than through individualized inquiry into hundreds of thousands of individuals and businesses. Simply put, Plaintiffs have not met their burden of demonstrating predominance. Accordingly, the Court denies certification of a Rule 23(b)(3) class on Plaintiffs' negligence claim.

> **b.** Individual causation and damages inquiries predominate over common questions regarding Plaintiffs' trespass claims.

The elements of a trespass claim are "(1) the plaintiff owns or has lawful right to possess real property; (2) the defendant entered the plaintiff's [property] and the entry was physical, intentional, and voluntary; and (3) the defendant's trespass caused injury to the plaintiff." *Lyle v. Midway Solar, LLC*, 618 S.W.3d 857, 875 (Tex. App.–El Paso 2020, pet. denied) (quoting *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. Ct. App.–Ft. Worth 2006, pet. denied)).

Plaintiffs have proposed no mechanism to show that individual plaintiffs have a right to lawfully possess the property Defendants allegedly trespassed on. Even if Plaintiffs use common evidence to prove that they have a right to possess real property, they cannot use common evidence to show that Defendants physically, intentionally, and voluntarily entered each individual plaintiffs' properties and injured them. Plaintiffs attempt to brush this issue aside, writing: "whether there was a physical invasion of Plaintiffs' property and whether that invasion was unlawful, and whether Defendant failed to prevent an unreasonable interference – would not require the Court to inquire extensively into individual cases for proof of liability." ECF No. 40 at 18. This naked assertion is insufficient to satisfy Plaintiffs' burden. Plaintiffs propose no representative sampling or other method of common proof to satisfy the second element of trespass. *See Prantil*, 2022 WL 1570022, at \*34

(finding predominance lacking with regard to trespass claim where plaintiffs failed to conduct representative sampling). Absent such common proof, Plaintiffs' trespass claim would "require individual inquiries that would "overwhelm questions common to the class." *Id*. (internal quotation marks and citations omitted).

Even setting aside these infirmities, an individualized inquiry into each property would be necessary to show that Defendants caused the injury and to determine the damages from it. *Corley v. Entergy Corp.*, 220 F.R.D. 478, 486 (E.D. Tex. 2004) (rejecting certification of a damages class on a trespass claim because "each landowner is entitled to damages based on the specific characteristics of his or her land and the extent of the Defendants' trespass on his or her land" such that damages cannot be calculated on a class-wide basis). An individualized inquiry into causation would be necessary because, as Plaintiffs concede, contamination was not uniform within the Class Area. ECF No. 58 at 25 ("Neither the Plaintiffs nor Dr. Auberle represent that there was uniform contamination throughout the isopleth, nor are they required to do so."). Plaintiffs would also have to go property-by-property to assess the damages from Defendants' alleged trespass. This individualized inquiry would overwhelm common questions because the Class Area contains 53,320 distinct parcels of real property. Phillips Expert Rept. at 8, ECF No. 52-12.

As with negligence, individual questions would predominate over common

ones. Therefore, the Court denies Plaintiffs' request to certify a damages class for trespass due to a lack of predominance under Rule 23(b)(3).

> **c. Individual causation and damages inquiries predominate over common questions regarding Plaintiffs' private nuisance claim.[13]**

Texas courts "have defined a [private] nuisance as a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580 (Tex. 2016).

As with Plaintiffs' negligence and trespass claims, individualized issues related to causation and damages predominate. Plaintiffs' argument on this issue is limited to the assertion that "whether Defendant failed to prevent an unreasonable interference – would not require the Court to inquire extensively into individual cases for proof of liability." ECF No. 40 at 18. Plaintiffs provide no support for this statement or basis for the Court to conclude that such an inquiry would not be extensive. Setting aside how extensive this inquiry would be, Plaintiffs would still need to go property-by-property to establish that Defendants caused unreasonable discomfort or annoyance.

---

[13] Although Plaintiffs' do not specify whether they are maintaining a claim for private or public nuisance, Plaintiffs' Second Amended Complaint traces the elements of a private nuisance claim, and, therefore, the Court construes their claim as a private nuisance claim. *See* ECF No. 35 ¶72 (alleging "Plaintiffs are persons of ordinary sensibilities" "Defendants' substantial interference caused unreasonable discomfort, property damage, and/or annoyance").

Even more problematic is the issue of damages, which "are difficult to quantify" in a private nuisance action. *Reed v. LKQ Corp.*, 436 F. Supp. 3d 892, 920 (N.D. Tex. 2020). Plaintiffs' damages for lost use and enjoyment are "calculated as loss of rental value" or "use value." *Crosstex*, 505 S.W.3d at 610. Quantifying rental or use value necessarily depends on the characteristics of a particular property. *See United States v. 2.6433 Acres of Land*, No. 7:08-CV-00302, 2021 WL 4729306, at *7 (S.D. Tex. July 19, 2021) (endorsing calculation of rental value based on comparable properties). Here, the Class Area includes 53,000 properties, of which approximately 43,700 are residential, 1,600 are commercial, and 1,000 are industrial. Phillips Expert Rept. at 32, ECF No. 52-12. There is of course significant variation within each of those categories. An examination of residential properties within the Class Area illustrates the amount of variation. Although a large majority of the properties located in the Class Area are residential properties, this category is made up of numerous subcategories, including residential condominiums, residential townhomes, mobile homes, nursing homes, and other variations. *Id*. Even within each subcategory there are significant variations that would affect the calculation of damages. For example, the size of mobile homes varied from 240 square feet to 7,624 square feet. *Id*. at 45. As a result of the number of properties and the differences in characteristics among them, determining damages for private nuisance for each property requires individualized inquiries that would overwhelm common

42

questions and defeat predominance.

As with negligence and trespass, individual questions would predominate over common ones. Therefore, the Court denies Plaintiffs' request to certify a damages class for nuisance due to a lack of predominance under Rule 23(b)(3).

### d. Individual causation and damages inquiries predominate over common questions regarding Plaintiffs' product liability claims.

Plaintiffs' products liability claims for design defect, manufacturer's defect, and seller liability all require proof of causation and damages. Regarding these claims, Plaintiffs sole conclusory statement potentially addressing causation is that "the essential elements of whether Defendants placed into the stream of commerce and/or were sellers of bearings that had manufacturing and design defects and that caused the incident as maintained by ITC's Root Cause Analysis, will not require any individual inquiries." ECF No. 40 at 18-19. This statement fails to address causation. Therefore, Plaintiffs have failed to satisfy the predominance requirement of Rule 23. *Boggs v. Krum Indep. Sch. Dist.*, 376 F. Supp. 3d 714, 722 (E.D. Tex. 2019) ("A party waives an issue if he fails to adequately brief it.").[14]

---

[14] To plead a products-liability claim for design defect under Texas law requires the plaintiff to allege that: (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery. *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1040 (5th Cir. 2011) (quoting *Timpte Industries, Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009)).

Under Texas law, "'[a] manufacturing defect exists when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably

Although Plaintiffs make some arguments regarding causation in their reply, none of these arguments specifically address causation in the context of their product liability claims. ECF No. 58 at 13-16. Like the statement quoted above regarding their products claims, Plaintiffs' argument in their reply is largely limited to arguing that causation here is "not complicated." *Id*. at 13. Not so. Causation here is complicated and requires individualized inquiries on a person-by-person, property-by-property, and business-by-business basis across a class consisting of approximately 190,000 persons and between 2,500 and 3,500 businesses. Gilbert Expert Rept. at 3, ECF No. 40-2; *see also Cashatt v. Ford Motor Co.*, No. 3:19-CV-05886, 2021 WL 1140227, at *2 (W.D. Wash. Mar. 24, 2021) ("variation in causation is particularly challenging in products liability class actions, and many courts have declined certification on this basis.").

The same is true for damages. Individualized inquiry will be necessary to

---

dangerous.'" *Norman v. Bodum USA, Inc.*, 44 F.4th 270, 272 (5th Cir. 2022) (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). Further, "[a] plaintiff 'must prove that the product was defective when it left the hands of the manufacturer and that the defect was a producing cause of the plaintiff's injuries.'" *Norman*, 44 F.4th at 272 (quoting *Ford*, 135 S.W.3d at 600).

Under section 82.003, a plaintiff who has proven his products liability case may attempt to hold a non-manufacturing seller liable under certain circumstances. *Mann v. Calflex Mfg., Inc.*, No. SA-06-CA-338-FB, 2008 WL 559555, at *2 (W.D. Tex. Jan. 17, 2008). "In this way, section 82.003(a)(7) works like a theory of vicarious liability such as negligent entrustment." *Diamond H. Recognition LP v. King of Fans, Inc.*, 589 F. Supp. 2d 772, 776 (N.D. Tex. 2008). The circumstances under which a seller may be liable are limited to where: (1) the court does not have jurisdiction over manufacturer; (2) the seller participated in defective design; (3) the seller installed the product and installation was the proximate cause of injury; or (4) the seller altered the product and alteration was proximate cause of injury. Plaintiffs' Second Amended Complaint fails to allege that any of these four conditions are met. *Cf.* ECF No. 35 ¶¶91-96.

calculate damages for lost wages, lost profits, property damage, and other costs allegedly suffered across Plaintiffs' proposed class resulting from the ITC Fire. *See Simmons v. Ford Motor Co.*, 592 F. Supp. 3d 1262, 1296 (S.D. Fla. 2022), *reconsideration denied*, No. 18-CV-81558-RAR, 2022 WL 3975106, at *3 (S.D. Fla. Aug. 31, 2022) (denying class certification in products liability case because individual questions related to damages predominated). For these reasons, Plaintiffs have failed to satisfy their burden of demonstrating predominance under Rule 23(b)(3) and the Court denies Plaintiffs' request to certify a damages class for design defect, manufacturer's defect, or seller liability.[15]

## VI.   CONCLUSION

The Court finds that Plaintiffs have failed to satisfy Rule 23's requirements for class certification and, therefore, Plaintiffs' Motion to Certify a Class, ECF No. 39, is **DENIED**. Further, Plaintiffs' Motion to Exclude Opinions and Testimony of Defendants' Expert Paolo Zannetti, ECF No. 37, Defendants' Motion to Exclude Plaintiffs' Air Modeling Expert William Auberle, ECF No. 41, and Defendants' Motion to Exclude Plaintiffs' Toxicology Expert S. Thomas Dydek, ECF No. 42 are **DENIED AS MOOT** as a result.

---

[15] Plaintiffs' failure to demonstrate that common questions predominate over individualized questions requires the Court to deny of class certification. Therefore, the Court does not reach the superiority element.

**IT IS SO ORDERED.**

Signed on June 21, 2023, at Houston, Texas.

**Dena Hanovice Palermo**
**United States Magistrate Judge**